## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    No. 23-CR-371 (RJN) |
| | : |
| ROMERO DA COSTA NETO, | : |
| | : |
| Defendant. | : |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

I.    <u>Summary of the Plea Agreement</u>

Defendant Romero Da Costa Neto agrees to admit guilt and enter a plea of guilty to Count One of the Information which charges him with Insider Trading, in violation of Title 15, United States Code, Section 78j(b) and 17 C.F.R. § 240.10b-5.

In this case, the penalty for Count One is:

(A)    a term of imprisonment of not more than 20 years;

(B)    a fine not to exceed $5,000,000;

(C)    a term of supervised release of not more than 3 years, after any period of incarceration; and

(D)    a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

II.    <u>Elements of the Offenses</u>

The essential elements of the offense of Insider Trading in violation of Title 15, United States Code, Section 78j(b) and 17 C.F.R. § 240.10b-5 are:

1. The defendant used a device or scheme to defraud someone, made an untrue statement of a material fact, or failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;

2. The defendant's acts were in connection with the purchase of a security;

3. The defendant directly or indirectly used telephone, e-mail, computer systems, and other forms of interstate communication in connection with these acts;

4. The defendant acted for the purpose of defrauding buyers or sellers of the security.

III.  Brief Statement of the Facts

The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

Had this case gone to trial, the Government's evidence would prove the following beyond a reasonable doubt:

**STATEMENT OF FACTS**

Beginning in or around June 2023, Special Agents with the Washington Field Office of the Federal Bureau of Investigation ("FBI") initiated an investigation into the insider trading activities of Defendant Costa ("Costa").

Costa is a Brazilian attorney who was serving in a one-year visiting attorney position with Law Firm-1, working out of their offices in the District of Columbia. Costa worked primarily on

Foreign Corrupt Practices Act ("FCPA") matters and at no time was assigned to work on securities or mergers and acquisitions matters.

### *The Company-A/ Company-B Transaction*

Company-A is a Seattle-based biotech company founded in 1992 that focuses on the acquisition, development, and commercialization for blood-related cancers that offer unique benefits to patients. Company-A was recently acquired in a $1.7 billion deal. Law Firm-1 served as outside counsel for Company-A and representatives of Law Firm-1 were present in all Company-A board meetings discussing the sale.

Negotiations for the sale of Company-A to Company-B began in early April, 2023. The negotiations included a preliminary offer price from Company-B to acquire Company-A. On April 5, 2023, the Company-A Transaction Committee held a meeting by videoconference which was attended by Company A's senior management, and representatives of Company-A's legal counsel at Law Firm-1, and others. The Transaction Committee reviewed the terms of the proposal from Company-B.

In the following weeks Company-A received additional competing offers which proposed alternate transactions. On April 29, 2023, a representative of Company-B informed the President and Chief Executive Officer of Company-A that Company-B intended to submit a final proposal to acquire all of the shares of common stock on May 1, 2023.

On May 2, 2023, Company-B sent the President and Chief Executive Officer of Company-A a revised proposal to purchase all of the shares of Company-A stock for $8.80. Later that day, the Company-A Board held a meeting by videoconference, which included, among others, representatives of Law Firm-1. At the meeting, the Company-A Board instructed management to

inform Company-B that Company-A would be willing to enter into a strategic transaction with Company-B for an offer price greater than $9.00 per share.

On May 8, 2023, Company-B told the President and Chief Executive Officer of Company-A that Company-B was prepared to submit a revised proposal to Company-A for greater than $9.00 per share. Later that day, the Company-A Board held a meeting by videoconference, which again included representatives of Law Firm-1, among others. The President and Chief Executive Officer of Company-A updated the Company-A Board regarding the communications from Company-B and Company-A's expected receipt of a revised offer from Company-B.

On May 9, 2023, Company-B sent the President and Chief Executive Officer of Company-A a revised proposal to acquire all of the common stock of Company-A for $9.10 per share. Later that day, the Company-A Board held a meeting by teleconference, which included representatives of Law Firm-1, among others. At the meeting, representatives of their financial advisor firm opined that the latest offer from Company-B was fair to the shareholders from a financial perspective and the Board of Company-A unanimously approved the sale. When the market closed that afternoon of May 9, 2023, shares of Company-A settled at $4.82.

On May 10, 2023, at around 01:00 a.m., Company-A and Company-B each issued press releases announcing the sale and transaction price of $9.10 per share. Following the announcement, shares of Company-A opened for trading on May 10, 2023 at $8.91. They closed at $8.93 on May 10, 2023.

### *Costa Obtained Material Non-Public Information about the Company-A/ Company-B Transaction*

At all times relevant to this investigation, Costa was serving as an attorney for Law Firm-1. Law Firm-1 has an explicit prohibition on insider trading and the use of material non-

public information. Costa signed this policy acknowledgement before beginning his employment with Law Firm-1.

Law Firm-1 staff working on the transaction – not including Costa – created and stored numerous documents during their representation of Company-A. Between May 3, 2023 and May 9, 2023, Costa accessed and viewed documents on Law Firm-1's system relating to the acquisition of Company-A on over 100 separate occasions. These documents included draft versions of the SEC Form 8-K to announce the sale to Company-B, Board of Director minute trackers from meetings discussing the potential sale, and Transaction Committee minutes. Costa did not have any legitimate reason to access these documents.

### *Costa Traded Based on Material Non-Public Information*

According to Apex Clearing Corporation ("Apex"), Costa opened account number xxx-07489 with the online trading firm. The account name is Romero Neto. On May 9, 2023, in his Apex account, Costa purchased 5,411 shares of Company-A for a total of $25,998.69.

According to Charles Schwab ("Schwab"), Costa opened account number xxx-59044 with the online trading firm on September 22, 2022. On May 9, 2023 in his Schwab account, Costa purchased 4,989 shares of Company-A for a total of $23,987.42.

On May 10, 2023, one day after his purchase, but after the press releases were issued, Costa sold his entire position of 10,400 Company-A shares in his Apex and Schwab accounts for a total of $92,635.24, which resulted in a one-day investment profit of $42,649.13 for Costa. Costa executed these trades based on material non-public information.

### *Costa Obtained Material Non-Public Information about Other Transactions*

Costa has also obtained material non-public information involving Law Firm-1 clients

during his term of employment – and executed additional prohibited trades based on such information.

Company-C is a company represented by Law Firm-1. On June 2, 2023, Costa purchased stock in Company-C. On June 3, 2023, Company-C announced positive lead-in data from its ongoing Phase 3 PEAK trial evaluating a cancer drug. The stock price rose following this announcement. Costa sold his position in Company-C the following Monday, June 5, 2023. The following day, June 6, 2023, Law Firm-1 issued an opinion related to a secondary stock offering on behalf of Company-C, which had the effect of driving down the value of the stock. In short, Costa was able to purchase Company-C immediately before a positive market event and then quickly sell Company-C before the subsequent negative market event. Costa profited approximately $1,000 from these transactions. Costa executed these trades based on material non-public information that he accessed on Law Firm-1's system.

That is, Costa accessed Law Firm-1 files relating to Company-C without authorization on over 170 occasions between May 31, 2023 and June 6, 2023. The documents included drafts of a Clinical Data Form 8-K, draft documents relating to a stock offering, and draft press releases related to public offerings and pricing. Costa did not have any legitimate reason to view these documents, as he was not involved in that matter on behalf of the law firm.

Company-D is a company represented by Law Firm-1. On June 15, 2023, Company-E and Company-D announced a merger in an all-stock deal to create a $5.4 billion oilfield services firm. Between June 8, 2023 and June 12, 2023, Costa purchased approximately 7,000 shares of Company-E in advance of this merger announcement. He subsequently sold these shares and profited approximately $8,500 from these transactions. Costa executed these trades based on

material non-public information that he accessed on Law Firm-1's system.

Between May 9, 2023 and June 12, 2023, Costa accessed and viewed documents relating to Company-D on Law Firm-1's system on over 200 occasions. The documents included draft merger agreements, merger agreement board presentations, and draft press releases announcing the merger. Costa did not have any legitimate reason to view these documents; he was not involved in that matter on behalf of the law firm.

Costa acknowledges that he accessed material non-public information related to Company-A, Company-C, and Company-D, and used this information to execute securities trades. Costa acknowledges that he hid his accessing of this information, and use of that information to trade, from Law Firm-1 and Law Firm-1's clients. These trades were placed by using telephones, websites, and mobile phone applications which are all forms of communication that operate in interstate commerce.

Respectfully Submitted

MATTHEW M. GRAVES
United States Attorney

By: _____
Kevin Rosenberg
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea to one count of Insider Trading. I have discussed this proffer fully with my attorney, Blake Goebel, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 11/01/2023

Romero Da Costa Neto

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea to one count of Insider Trading. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 11/1/23

Blake Goebel, Esq.
Kenya Davis, Esq.
Counsel for Defendant